Marcel S. Pratt
Michael Berry
John W. Scott
Jordan Meyer
Ballard Spahr LLP
1735 Market Street, Fl. 51
Philadelphia, PA 19103-7599
215.864.8506
prattm@ballardspahr.com
berrym@ballardspahrcom
scottj@ballardspahr.com
meyerjl@ballardspahr.com

*Attorneys for Defendants Thomson Reuters Corporation, Thomson Reuters Holdings Inc., Thomson Reuters Canada Limited, and Thomson Reuters Applications Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | : : : | **CIVIL ACTION** |
| | : | **NO. 2:24-CV-04269** |
| *Plaintiffs* | : : | |
| v. | : : | |
| THOMSON REUTERS CORPORATION, et al., | : : : | |
| *Defendants* | : : | |

**SUPPLEMENTAL BRIEF OF THE THOMSON REUTERS
DEFENDANTS IN SUPPORT OF DEFENDANTS' CONSOLIDATED
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# **TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................... 1

ARGUMENT ........................................................................................................... 2

    I.      The Statute Prevents the Lawful and Legitimate Exchange of Information. ................................................................................................... 2

    II.     The Statute Punishes Publication of Information Without Requiring Any Fault. ................................................................................ 5

CONCLUSION ..................................................................................................... 10

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bartnicki v. Vopper*,
    532 U.S. 514 (2001) ................................................................................................. 4

*Counterman v. Colorado*,
    600 U.S. 66 (2023) ............................................................................................. 5, 10

*Florida Star v. B.J.F.*,
    491 U.S. 524 (1989) ................................................................................... 6, 7, 8, 10

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ............................................................................................ 6, 8

*Hamling v. United States*,
    418 U.S. 87 (1974) ................................................................................................. 6

*Hess v. Indiana*,
    414 U.S. 105 (1973) ............................................................................................... 6

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ............................................................................................ 5, 6

*Reno v. ACLU*,
    521 U.S. 844 (1997) ............................................................................................... 2

*Smith v. California*,
    361 U.S. 147 (1959) ............................................................................................ 5, 9

*State v. Globe Communications Corp.*,
    648 So. 2d 110 (Fla. 1994) .................................................................................... 8

*United States v. Stevens*,
    559 U.S. 460 (2010) ............................................................................................... 8

*Wieman v. Updegraff*,
    344 U.S. 183 (1952) ............................................................................................... 6

Case 1:24-cv-04269-HB   Document 28   Filed 06/14/24   Page 4 of 15 PageID: 835

**Statutes**

N.J. Stat. Ann. § 2C:20-31.1 .................................................................................................9

N.J. Stat. Ann. § 47:1B-3 ......................................................................................................3

**Other Authorities**

U.S. Const. amend. I .....................................................................................................*passim*

# INTRODUCTION

Daniel's Law attempts to serve a laudable goal: protection of judges, law enforcement officers, prosecutors, and child protective investigators who may be at risk of harm based on their government service. But rather than narrowly serving that interest, the statute goes much further, and in so doing, runs afoul of the Constitution and cannot survive First Amendment scrutiny. *See* Mem. of Law in Support of Defs.' Consolidated Mot. to Dismiss Pls.' Compl. (hereinafter "Consolidated Br."), *Atlas Data Privacy Corporation, et al., v. Lightbox Parent, L.P., et al.*, No. 24-4105, ECF Nos. 27-33 (D.N.J. June 10, 2024). The Thomson Reuters Defendants[1] write separately to emphasize two additional constitutional concerns: (1) the statute is overbroad because it punishes speech with lawful and legitimate purposes; and (2) the statute violates the First Amendment because it punishes speech without any regard to the speaker's state of mind. Lacking any tailoring or *mens rea* requirement, the statute is facially unconstitutional.

---

[1] The Thomson Reuters Defendants are Thomson Reuters Corporation, Thomson Reuters Canada Limited, Thomson Reuters Holdings Inc., and Thomson Reuters Applications Inc. Only two of these four Thomson Reuters Defendants have been served (Thomson Reuters Applications and Thomson Reuters Holdings). The Thomson Reuters Defendants do not concede that any of these entities are the properly named defendants in this case. *See* ECF No. 1. Indeed, plaintiffs fraudulently joined Thomson Reuters entities that are not responsible for the website cited in the Complaint or the email address to which plaintiff Atlas Data Privacy Corp. sent non-disclosure requests. *See* ECF Nos. 1-3. Thus, "Thomson Reuters" in the motion refers more broadly to the Thomson Reuters enterprise.

# ARGUMENT

## I. The Statute Prevents the Lawful and Legitimate Exchange of Information.

The statute punishes publication of information based on its content, regardless of the reasons for disclosure. *See* Consolidated Br. at 22-25. This is not the least restrictive means of promoting the statute's purpose. *See Reno v. ACLU*, 521 U.S. 844, 877-79 (1997). The statute's vast overbreadth undermines law enforcement and frustrates the exchange of truthful information among businesses, government agencies, and others for lawful and legitimate purposes, even when the exchange has no impact on a covered person's safety.

First, the statute's prohibition and broad definition of "disclose" sweep into its ambit uses that are necessary for the government to ensure the safety of the public. *See* Consolidated Br. at 3-5, 27-31 (discussing definition of "disclose"). The statute applies to non-public databases utilized by law enforcement and other government agencies, who access those databases to conduct investigations and prosecute crimes. In so doing, the statute undermines its stated goal.

Second, the statute prohibits disclosure of information even where such information is *only* disclosed to verified third-party entities following rigorous credentialing processes and *only* disclosed if those entities attest they are accessing the information for lawful and legitimate purposes. In addition to law enforcement agencies, those third parties could include financial institutions, who may use the

information to authorize loans and flag suspicious banking activity. It also could include law firms, who may use the information to serve process or to notify individuals of class action settlements.

The statute, however, prohibits non-public disclosure to those agencies, institutions, and firms, even if the provider of the information has vetted the recipients extensively, limits who at those entities can access the information, and requires recipients to document that they have a lawful and legitimate purpose for seeking the information on a search-by-search basis. In these situations, limited disclosure of the information is highly unlikely to implicate the safety of covered persons – and, rather, helps protect them and their families. Yet, plaintiffs claim that such disclosures are uniformly prohibited by the statute.

The legislature seemingly recognized that the statute's broad reach could impede certain important functions when it decided to exempt disclosure by a public agency to vendors, contractors, or organizations "to carry out the purposes for which the public agency entered" entered into agreements with those entities. *See* N.J. Stat. Ann. § 47:1B-3. Under Daniel's Law, however, private entities are not allowed to share that same information with the government – even where the information facilitates a lawful and legitimate public purpose or when necessary to fulfill the entities' agreements with the government.

3

Third, the statute applies even when entities have stringent safeguards in place to track closely disclosure of information and facilitate the discovery of conduct that could indicate a safety concern. For instance, the statute contains no exemptions for entities that monitor and audit search history within their products to guard against misuse.[2]

The statute's broad reach, regardless of the interest served by disclosure, is inconsistent with the First Amendment, which requires a regulation of speech to be closely tied to the danger that prompted the regulation. *See* Consolidated Br. at 25-26. Indeed, the statute runs counter to the Supreme Court's instruction that a law cannot punish speech simply because that speech may be used by others to perpetuate their own independent criminal activity. *See Bartnicki v. Vopper*, 532 U.S. 514, 529-30 (2001) ("[I]t would be quite remarkable to hold that speech by a

---

[2] Daniel's Law is facially unconstitutional due to its extensive overbreadth. The Thomson Reuters Defendants reserve the right to challenge the constitutionality of the statute on as-applied grounds, as well as the right to raise additional defenses. As explained above, the law's prohibitions reach non-public products designed and used for lawful and legitimate purposes. For example, the law's expansive sweep ostensibly covers the CLEAR product advertised on the thomsonreuters.com website referenced in plaintiffs' complaint. *See* Compl. ¶ 42; *see also* https://legal.thomsonreuters.com/en/products/clear-investigation-software/law-enforcement. That product is used by law enforcement authorities around the country to help keep communities safe, requires thorough vetting and credentialing for the institutions that use it, demands that its users certify that each search is for a permissible use under applicable law, and contains a robust security system.

law-abiding possessor of information can be suppressed in order to deter conduct by a non-law-abiding third party.").

There is simply no lawful basis for prohibiting disclosure in each of the circumstances detailed above to further the state's interest in the safety of covered persons. The statute is therefore facially overbroad.

## II. The Statute Punishes Publication of Information Without Requiring Any Fault.

The statute also is at odds with the fundamental First Amendment principle that speech cannot be punished on a strict liability basis. Under long-standing Supreme Court jurisprudence, a speaker cannot be sanctioned without requiring some degree of fault. *See Smith v. California*, 361 U.S. 147, 152 (1959); *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 278-79 (1964) (recognizing that state-of-mind requirements are "essential" to protect First Amendment freedoms). That jurisprudence is based on the recognition that "[p]rohibitions on speech have the potential to chill, or deter, speech outside their boundaries." *Counterman v. Colorado*, 600 U.S. 66, 75 (2023). To prevent this chilling effect, the Court has repeatedly held that liability can be imposed for speech *only* upon "a showing of a culpable mental state." *Id.* In a variety of contexts, the Court has required some level of fault – whether intent, knowledge, recklessness, or negligence – for speech to be declared unlawful. *See id.* at 79 (holding that, to prove speech was a true threat, government must show defendant "consciously disregard[ed] a substantial

5

and unjustifiable risk that the conduct will cause harm to another" (internal marks omitted)); *Sullivan*, 376 U.S. at 279-80 (holding that it is unconstitutional for public officials to recover for defamation unless they prove a false statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not"); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974) (allowing states to impose liability for defamation against private figures "so long as they do not impose liability without fault"); *Hess v. Indiana*, 414 U.S. 105, 109 (1973) (precluding punishment for incitement unless the speaker's words were "intended," not just likely, to produce imminent disorder); *Hamling v. United States*, 418 U.S. 87, 122-123 (1974) (conditioning liability for obscenity on an awareness of "the character and nature" of the materials distributed); *Wieman v. Updegraff*, 344 U.S. 183, 191 (1952) (striking down Oklahoma law permitting termination of state employees who decline to take loyalty oath because, under that law, "the fact of association alone determines disloyalty and disqualification; it matters not whether association existed innocently or knowingly").

    Where the speech in question is true, as it is in this case, the speaker's state of mind is especially important. The Supreme Court's decision in *Florida Star v. B.J.F.*, 491 U.S. 524 (1989), is instructive. There, a newspaper received an incident report from a police department that identified a victim of sexual assault by her full name. *Id.* at 527. In its report on the crime, the newspaper included the

victim's name. *Id.* The victim sued the newspaper under a Florida statute that prohibited publishing the name of a victim of a sexual offense. *Id.* at 528. Although the statute contained no explicit *mens rea* requirement, the victim alleged the newspaper "negligently violated" the statute. *Id.* The trial judge held that the newspaper's violation of the statute, standing alone, was negligence *per se*. *Id.* at 528-29.

The Supreme Court reversed, holding that this strict liability regime could not be used to sanction the newspaper's report of truthful information. *Id.* at 529. Although enacted to protect a victim's privacy, the "broad sweep" of the trial court's "negligence *per se*" standard allowed recovery "automatically," without regard to how the defendant obtained or used the victim's identity. *Id.* at 539. As the Court explained, that standard permitted a victim to recover money damages irrespective of "whether the identity of the victim is already known throughout the community," "whether the victim has voluntarily called public attention to the offense," or "whether the identity of the victim has otherwise become a reasonable subject of public concern." *Id.*

The Court further held that imposing liability would be unconstitutional because neither the statute's text nor the trial court's "negligence *per se*" ruling contained a "scienter requirement of any kind." *Id.* As the Court explained, the award of money damages "engender[ed] the perverse result that truthful

7

publications" subject to the law "are less protected by the First Amendment than even the least protected defamatory falsehoods," which can be sanctioned only upon a showing of at least negligence. *Id.* (citing *Gertz*, 418 U.S. at 323).[3]

Daniel's Law suffers from the same defects. Similar to the statute in *Florida Star*, it imposes strict liability for the publication of true information and imposes that liability regardless of whether the covered person's address and phone number are already publicly available, whether the covered person has made that information known, or whether that information is published in connection with a matter of legitimate public concern.[4] *See* Consolidated Br. at 30-31 n.25, 37-40.

The absence of any fault requirement also highlights the statute's overbreadth and provides additional examples of how it is not narrowly tailored to

---

[3] While the Supreme Court held the statute unconstitutional as applied, the Supreme Court of Florida subsequently held the statute unconstitutional on its face, explaining that the *Florida Star* decision made clear that "a state may not automatically impose liability for the publication of lawfully obtained truthful information about a matter of public concern." *State v. Globe Commc'ns Corp.*, 648 So. 2d 110, 112 (Fla. 1994).

[4] In *Florida Star*, the Court rejected the argument that "the legislature – reflecting popular sentiment – has determined that disclosure of the act that a person was raped is categorically a revelation that reasonable people find offensive." 491 U.S. at 548 (White, J., dissenting). Here, the New Jersey legislature made the same kind of assessment in providing that entities which receive notifications can *never* disclose covered persons' addresses and phone numbers. But, the legislature's assessment cannot override the First Amendment. *Cf. United States v. Stevens*, 559 U.S. 460, 471 (2010) (government cannot decide certain speech is unworthy of First Amendment protection based on "a simple cost-benefit analysis").

achieve the government's interest. For example, the statute could have conditioned liability on a showing that the speaker knew or had reason to know that disclosure of a covered person's address or phone number would pose an imminent or serious threat to that person's safety.[5]

The statute also could have conditioned liability on whether a speaker knew or had reason to know that a notification was sent by a person who actually qualified as a covered person or authorized person under the statute or that the notification was valid. Not only does the statute fail to include this limitation on liability, but the legislature removed any requirement for a covered person to be verified by a government agency. Consolidated Br. at 7-8, 32-33. As a result, entities are unable to verify the authenticity of a takedown notification or determine whether removal of the information is warranted under the statute. *See Smith*, 361 U.S. at 152 (holding obscenity statute unconstitutional because its "strict liability feature" penalized booksellers "even though they had not the slightest notice of the character of the books they sold").

Faced with strict liability and mandatory civil penalties, entities are forced to remove information any time they receive a non-disclosure notification –

---

[5] The legislature did, in fact, require at least recklessness to impose criminal penalties for disclosure of the same information at issue here. *See* N.J. Stat. Ann. § 2C:20-31.1 (criminalizing disclosure when made "knowingly, with purpose to expose another to harassment or risk of harm to life or property, or in reckless disregard of the probability of such exposure").

regardless of whether they believe there is a threat to a covered person's safety, should know there is reasonable risk of threat to a covered person, or have any reason to know the notification is even valid. At bottom, the statute leaves speakers with no potential defense to liability. This is precisely the concern motivating the Supreme Court's requirement of a "culpable mental state" to sanction speech. *Counterman*, 600 U.S. at 75; *Florida Star*, 491 U.S. at 539.

## CONCLUSION

For the foregoing reasons, and the reasons discussed in Defendants' Consolidated Brief, the statute is unconstitutional under the First Amendment, and this Court should grant Defendants' motion to dismiss.

Dated: June 14, 2024

BALLARD SPAHR LLP

*/s/ Michael Berry*
Marcel S. Pratt
Michael Berry
John W. Scott
Jordan Meyer
1735 Market Street, Fl. 51
Philadelphia, PA 19103-7599
215.864.8605
prattm@ballardspahr.com
berrym@ballardspahr.com
scottj@ballardspahr.com
meyerjl@ballardspahr.com

*Attorneys for Defendants Thomson Reuters Corporation, Thomson Reuters Holdings Inc., Thomson Reuters Canada Limited, and Thomson Reuters Applications Inc.*

10

## **CERTIFICATE OF SERVICE**

I hereby certify that, on the date set forth below, I caused a copy of the foregoing document to be served via electronic filing on all counsel of record.

Dated: June 14, 2024

<div align="right">

*/s/ Michael Berry*
Michael Berry

</div>