Marcel S. Pratt
Michael Berry
John W. Scott
Jordan Meyer
Ballard Spahr LLP
1735 Market Street, Fl. 51
Philadelphia, PA 19103-7599
215.864.8500
prattm@ballardspahr.com
berrym@ballardspahr.com
scottj@ballardspahr.com
meyerjl@ballardspahr.com

*Attorneys for Defendants Thomson Reuters Corporation,
Thomson Reuters Holdings Inc., Thomson Reuters Canada
Limited, and Thomson Reuters Applications Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., | : | **CIVIL ACTION** |
| | : | |
| | : | **NO. 2:24-CV-04269** |
| *Plaintiffs* | : | |
| | : | |
| v. | : | |
| | : | |
| THOMSON REUTERS CORPORATION, et al., | : | |
| | : | |
| *Defendants* | : | |

## SUPPLEMENTAL BRIEF OF THE THOMSON REUTERS DEFENDANTS IN OPPOSITION TO PLAINTIFFS' CONSOLIDATED MOTION TO REMAND

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ..................................................................................... 1

PROCEDURAL BACKGROUND ............................................................. 2

FACTUAL BACKGROUND ..................................................................... 4

I.    Atlas .............................................................................................. 4

II.   Daniel's Law ................................................................................. 5

III.  Atlas's Assignments .................................................................... 6

IV.   Plaintiffs' Lawsuit Against The Thomson Reuters Defendants ...................... 7

V.    The Non-Diverse Defendants, The Takedown Notices, And The Thomson Reuters Products ................................................................. 9

ARGUMENT ........................................................................................... 12

I.    The Fraudulent Joinder Standard ................................................. 13

II.   Plaintiffs' Claims Against The Fraudulently Joined Defendants Have No Reasonable Basis In Fact, And There Is No Colorable Ground To Proceed Against Them ............................................... 15

III.  The Fraudulently Joined Defendants Are, At Most, Nominal Parties ........................................................................................ 23

CONCLUSION ........................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                      **Page(s)**

*Abels v. State Farm Fire & Cas. Co.*,
    770 F.2d 26 (3d Cir. 1985) ................................................................12, 14

*In re Avandia Mktg., Sales Prac. & Prods. Liab. Litig.*,
    924 F.3d 662 (3d Cir. 2019) .....................................................................5

*Avicolli v. BJ's Wholesale Club, Inc.*,
    2021 WL 1088249 (E.D. Pa. Mar. 22, 2021) ...............................................19, 20

*Becker v. Farmington Cas. Co.*,
    2009 WL 1845221 (M.D. Pa. June 25, 2009)................................................14

*Boyer v. Snap-on Tools Corp.*,
    913 F.2d 108 (3d Cir. 1990) ......................................................................2

*In re Briscoe*,
    448 F.3d 201 (3d Cir. 2006) ..............................................................*passim*

*Bumberger v. Ins. Co. of N. Am.*,
    952 F.2d 764 (3d Cir. 1991) ....................................................................23

*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine)*
    *Prods. Liab. Litig.*,
    220 F. Supp. 2d 414 (E.D. Pa. 2002)...................................................*passim*

*DiMichelle v. Sears & Roebuck Co.*,
    1997 WL 793589 (E.D. Pa. Dec. 5, 1997)....................................................19

*E. Coast Advanced Plastic Surgery v. Aetna, Inc.*,
    2018 WL 3062907 (D.N.J. June 21, 2018)................................................15, 16

*Faucett v. Ingersoll-Rand Mining & Mach. Co.*,
    960 F.2d 653 (7th Cir. 1992) ...................................................................20

*Hannah v. Johnson & Johnson Inc.*,
    2020 WL 3497010 (D.N.J. June 29, 2020).....................................................21

*Hernandez v. Home Depot, U.S.A., Inc.*,
    2006 WL 1647438 (N.D. Ill. June 5, 2006)...................................................20

*Johnson v. SmithKline Beecham Corp.*,
  724 F.3d 337 (3d Cir. 2013) ..................................................................23

*Keystone Sports & Ent. LLC v. Fed. Ins. Co.*,
  2021 WL 5789021 (E.D. Pa. Dec. 7, 2021).....................................14, 18, 19, 22

*Lopienski v. Centocor, Inc.*,
  2008 WL 2565065 (D.N.J. June 25, 2008)........................................................24

*Lyons v. Am. Tobacco Co.*,
  1997 WL 809677 (S.D. Ala. Sept. 30, 1997) ...................................................21

*Masselli v. Total Luxury Grp.*,
  2008 WL 4126556 (D.N.J. Aug. 29, 2008) .......................................................22

*Mayes v. Rapoport*,
  198 F.3d 457 (4th Cir. 1999) .............................................................................13

*McKenna v. Verint Ams. Inc.*,
  2022 WL 3211422 (D.N.J. Aug. 9, 2022) ...................................................16, 23

*Michaels v. New Jersey*,
  955 F. Supp. 315 (D.N.J. 1996) ........................................................................23

*Navarro Sav. Ass'n v. Lee*,
  446 U.S. 458 (1980)...........................................................................................23

*Pansy v. Borough of Stroudsburg*,
  23 F.3d 772 (3d Cir. 1994) ..................................................................................5

*Perez v. Penske Logistics, LLC*,
  2021 WL 3661017 (E.D. Pa. Aug. 17, 2021) ...................................................21

*Poulos v. Naas Foods, Inc.*,
  959 F.2d 69 (7th Cir. 1992) ...............................................................................14

*Quimby v. Stevens*,
  2020 WL 8881371 (D. Nev. Feb. 5, 2020).......................................................20

*Reeser v. NGK Metals Corp.*,
  247 F. Supp. 2d 626 (E.D. Pa. 2003)................................................................20

*Reid v. Albizem*,
2014 WL 2915883 (E.D. Pa. June 25, 2014)......................................................14

*Reith v. Teva Pharms. USA, Inc.*,
2019 WL 1382624 (E.D. Pa. Mar. 27, 2019) ........................................13, 16, 21

*Spring-Ford Area Sch. Dist. v. Genesis Ins. Co.*,
158 F. Supp. 2d 476 (E.D. Pa. 2001)...........................................................14, 24

*Susman v. Goodyear Tire & Rubber Co.*,
2018 WL 1243733 (E.D. Pa. Mar. 9, 2018) .......................................................15

*Veugeler v. Gen. Motors Corp.*,
1997 WL 160749 (N.D. Ill. Apr. 2, 1997)...........................................................19

*Weston v. Progressive Com. Holdings, Inc.*,
2011 WL 231709 (D. Del. Jan. 24, 2011) ...........................................22, 23, 24

*Whitman v. Walmart Stores East, LP*,
2021 WL 4745069 (E.D. Pa. Oct. 12, 2021) ......................................................13

*Williams v. John Middleton Co.*,
2023 WL 3393413 (E.D. Pa. May 11, 2023)........................................13, 14, 18

## Statutes & OtherAuthorities

Local Civ. Rule 5.3 .......................................................................................................5

N.J. Stat. Ann. § 56:8-166.1............................................................................*passim*

## <u>INTRODUCTION</u>

In this case, Plaintiffs arbitrarily sued two non-diverse Thomson Reuters entities with no possible involvement in alleged Daniel's Law violations. Plaintiffs fail to connect either of those non-diverse Defendants to a single allegation in their Complaint and did not provide a basis for naming them in their two-sentence footnote addressing these Defendants' unique ground for removal. Nor could they.

Those two non-diverse Defendants – Thomson Reuters Holdings, Inc. and Thomson Reuters Applications, Inc. – are not involved with any of the alleged notices or disclosures giving rise to Plaintiffs' claims. Indeed, Plaintiffs filed suit against the two non-diverse Defendants in the face of publicly available information demonstrating that it would be pointless. Plaintiffs' claims against those two Defendants have no reasonable basis in fact and are not colorable.

Tellingly, in support of their Motion to Remand, Plaintiffs brush aside the Thomson Reuters Defendants' fraudulent joinder argument in a footnote, claiming that, "[f]or the same reasons Defendants' collusive assignment theory fails, so does the fraudulent joinder argument." ECF No. 15-1 ("Mem.") at 12-13 n.5. They did not mention the Defendants' other ground for removal – that the non-diverse Defendants are, at most, nominal parties – at all. Nor did Plaintiffs even attempt to address the facts or declaration supporting the Thomson Reuters Defendants' removal petition. That is because Plaintiffs have no answer for the uncontroverted

evidence showing liability could not possibly be imposed on the non-diverse
Defendants.  They are nominal parties, and their joinder is fraudulent.  *In re
Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006) (joinder is fraudulent when "there is no
reasonable basis in fact or colorable ground supporting the claim against the joined
defendant").

Despite claiming not to care whether this case proceeds in federal or state
court, Mem. at 1, Plaintiffs and their counsel have engineered assignments to a
Delaware corporation, sued two Delaware companies that have nothing to do with
the alleged disclosures at issue, and then have opposed the removal of this case to
federal court.  As this Court has recognized in the past, "so long as federal
diversity jurisdiction exists . . . the need for its assertion may well be greatest when
plaintiff tries hardest to defeat it."  *In re Diet Drugs (Phentermine, Fenfluramine,
Dexfenfluramine) Prods. Liab. Litig.*, 220 F. Supp. 2d 414, 425 (E.D. Pa. 2002)
(Bartle, J.) (quoting *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir.
1990)).  That is certainly the case here.

The Thomson Reuters Defendants respectfully request that the Court deny
Plaintiffs' Motion for Remand and retain jurisdiction.

## PROCEDURAL BACKGROUND

This suit arises out of thousands of takedown notices sent pursuant to New
Jersey's Daniel's Law.  *See* N.J. Stat. Ann. § 56:8-166.1.  That law aims to protect

the safety and security of certain public officials in the judicial system ("Covered Persons").  *Id.* § 56:8-166.3.  Most of the claims at issue in this case are the result of alleged assignments of claims to Atlas Data Privacy Corp. ("Atlas"), which purports to be the assignee for "approximately 19,600 individuals" who are Covered Persons under the law.  *See* ECF No. 1-2 ("Compl.") ¶ 26.

Atlas filed this suit against the Thomson Reuters Defendants – Thomson Reuters Corporation, Thomson Reuters Holdings Inc. ("TR Holdings"), Thomson Reuters Canada Limited, and Thomson Reuters Applications Inc. ("TR Applications") – in the Superior Court of New Jersey in Morris County.  *See* Compl. at 1.[1]  It is one of many dozens of nearly identical suits filed in New Jersey state court by Atlas and individuals claiming that an array of businesses are disclosing protected information of Covered Persons in violation of Daniel's Law.

The Thomson Reuters Defendants removed the case to this Court, pursuant to 28 U.S.C. §§ 1332 and 1441(b), on the basis that there is complete diversity of citizenship between the Plaintiffs and Defendants, explaining that the two non-diverse Defendants – TR Holdings and TR Applications – were fraudulently joined (the "Fraudulently Joined Defendants"), and, thus, their citizenship should be disregarded.  *See* ECF No.1 ("Notice of Removal") ¶¶ 8, 42.

---

[1] Only two of the four Thomson Reuters Defendants have been served (TR Holdings and TR Applications).  The Thomson Reuters Defendants do not concede that any of these entities are properly named as defendants.

Plaintiffs filed a Motion to Remand both this case and other cases removed to federal court on May 3, 2024. *See* ECF 15 ("Mot."). The Court ordered jurisdictional discovery on June 3, 2024, *see* ECF No. 23, and scheduled briefing in opposition to the Motion, *see* ECF No. 31 at 10. In accordance with those orders, the Thomson Reuters Defendants now file this brief.[2]

## FACTUAL BACKGROUND[3]

### I.  Atlas

Atlas is a Delaware corporation. Compl. ¶ 25. It seeks to take advantage of a New Jersey law and that law's provision allowing it to take assignment of claims from Covered Persons in New Jersey. *See* Consol. Br. at 6-16.

Although Atlas says it has a New Jersey office, Compl. ¶ 25, it did not register to do business in New Jersey until January 2024. *See* Atlas Dep.

---

[2] The Thomson Reuters Defendants join the consolidated opposition brief's ("Consol. Br.") overview of the background information bearing on this ground for removal and the supporting materials submitted with the Declaration of Angelo A. Stio ("Stio Decl.") accompanying that brief. *See, e.g.*, ECF 53, 54, *Atlas Data Privacy Corp., et al v. Carco Group Inc., et al.*, No. 1:24-cv-04077-HB (D.N.J.).

[3] The facts set forth below are taken from the allegations of Plaintiffs' Complaint, the documents produced by Atlas as part of the court-ordered jurisdictional discovery, the jurisdictional deposition of Atlas's corporate designee ("Atlas Dep.," excerpts attached as Ex. 1), information publicly available in the website referenced in the Complaint, the Declaration of Heather O'Hagan (ECF No. 1-3, "O'Hagan Decl.") that accompanied the Notice of Removal, the Declaration of Steven Fox ("Fox. Decl.," attached hereto as Ex. 2) filed herewith, and facts that are properly the subject of judicial notice. All of this material is properly considered in connection with Plaintiff's Motion to Remand. *See infra* at 13-14.

146:13-21.  It did so ███████████████████████████████

███████████████████████████████████████████████████

████████████████  *See id.* at 148:9 – 149:3.[4]

## II.    <u>Daniel's Law</u>

Daniel's Law grants certain authorized persons the right to prevent the

disclosure of Covered Persons' home addresses and unpublished home telephone

numbers by businesses to whom they provide "written notice."  N.J. Stat. Ann.

§ 56:8-166.1(a)(2).  The law does not describe the precise requirements of the

notice, except that the notice shall be provided "to the person from whom the

authorized person is seeking non-disclosure."  *Id.*  The law provides that – "[u]pon

notification" – the business receiving the notice "shall not disclose or re-disclose"

the information covered by the statute.  *Id.* § 56:8-166.1(a)(1).  The law provides

ten business days to comply with the written notice.  *Id.*

If the Covered Person's information continues to be disclosed by the

business, the Covered Person or an assignee may bring a civil action.  *Id.* § 56:8-

166.1(b), (d).  Only a business that receives a notice and then continues to disclose

---

[4] As required by Local Civ. Rule 5.3(c)(4), an unredacted version of this Brief and
Exhibit 1 have been filed under seal to accommodate Plaintiffs' claim that
information in that exhibit is confidential.  The Thomson Reuters Defendants do
not believe the material is properly designated as confidential or should be sealed.
*See In re Avandia Mktg., Sales Prac. & Prods. Liab. Litig.*, 924 F.3d 662 (3d Cir.
2019); *Pansy v. Borough of Stroudsburg,* 23 F.3d 772 (3d Cir. 1994).

information may be liable under the law.  *See id.* § 56:8-166.1(a), (b).

### III.   <u>Atlas's Assignments</u>

Atlas claims to be the assignee of "approximately 19,600" Covered Persons' Daniel's Law claims.  Compl. ¶ 26.  Prior to the assignments, Atlas allegedly contracted with each Covered Person.  *See id.* ¶¶ 30, 57.  Under the contracts, Atlas "monitors the Internet," conducts searches "to locate records of [the Covered Persons] in third-party databases," "identif[ies] parties that may be publishing or selling personal information," and "creates lists of those parties as suggested recipients for . . . takedown notices."  Mot. Ex. E §§ 3(a), 4(d)(ii) (ECF 15-3).  Atlas then facilitates the sending of takedown notices to businesses.  *Id.* § 4(d)(iv).

The contracts provide Atlas with the unilateral right to take assignment of any claim that Covered Persons might have against recipients of takedown notices at any time Atlas desires.  *Id.* § 4(e)(ii).  Once Atlas takes the assignments, they are irrevocable.  *Id.*  Atlas then has "the exclusive right to bring such civil enforcement actions anywhere in the world," *id.*, and the authority to manage the "prosecution and resolution" of assigned claims "in its sole discretion."  *Id.* § 4(d)(iv); *see* Atlas Dep. at 181:6 – 182:22 (explaining that Atlas has the "discretion [to] determine . . . an efficient method of prosecuting takedown notice enforcement actions").

██████████████, Atlas took assignment of thousands of Covered Persons' claims.  *See* Consol. Br. at 14-15; Stio Decl. Exs. 7, 11-13, 14.

6

**IV.** <u>**Plaintiffs' Lawsuit Against The Thomson Reuters Defendants**</u>

Within days of taking the assignments, Atlas brought dozens of lawsuits, including this suit against the Thomson Reuters Defendants. Although Atlas is a Delaware corporation that named as defendants two Thomson Reuters entities incorporated in Delaware – TR Holdings and TR Applications – it did not file suit in Delaware. Instead, as in every other case that it brought under Daniel's Law, it filed suit in New Jersey state court, a place where neither Atlas nor any of the Thomson Reuters Defendants is incorporated or has its principal place of business. *See* Compl. ¶ 25; O'Hagan Decl. ¶¶ 6-9.[5]

When asked about the decision to file the lawsuits in New Jersey state court, Atlas testified that it has "no understanding of federal court, state court, other courts" and does not "care whether these cases . . . are in federal court or state court." Atlas Dep. at 297:12-18, 314:9-12. The decision about where to bring this case and other cases was left entirely to Atlas's three law firms. *See, e.g.*, *id.* at 293:3-12, 295:8-15. All of the cases were brought in New Jersey state court. *See,*

---

[5] The other two Thomson Reuters Defendants are based in Canada and completely diverse. *See* O'Hagan Decl. ¶¶ 6, 8. In its Complaint, Atlas states that it has an office in New Jersey, Compl. ¶ 25, but does not claim that office is its principal place of business. Further, at its deposition, Atlas testified that ███████████ ███████████████████████ Atlas Dep. at 147:15-22. Atlas also testified that ██████████████████████████████████████████████████████ ████████████." *Id.* at 133:3-5, 134:1-7.

*e.g.*, *id.* at 194:15-16 ("there is uniformity across the different cases").

Plaintiffs' Complaint in this case contains relatively little information about their claims. It is nearly identical to those in their other lawsuits. The Complaint includes boilerplate language alleging that each of the four Thomson Reuters Defendants "discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons." Compl. ¶¶ 37-40 (making the identical allegation for each Defendant).

The Complaint does not contain any specific allegation about the conduct of any of the individual Thomson Reuters Defendants. Instead, throughout the Complaint, Plaintiffs refer vaguely to "Defendants." First, Plaintiffs broadly allege that "*Defendants* offer and engage in the disclosure of data and information through one or more websites or applications." Compl. ¶ 42 (emphasis added). The Complaint, however, only identifies one website: thomsonreuters.com. *Id.*

The Complaint continues by alleging that thousands of Covered Persons provided "*Defendants*" written notice requesting that their home addresses and telephone numbers not be disclosed. Compl. ¶ 28 (emphasis added); *see also id.* ¶ 60 (alleging that Covered Persons "transmitted notice in writing to *Defendants*" (emphasis added)). The Complaint alleges that these notices were sent to a single email address: privacy.issues@thomsonreuters.com. *See id.* ¶¶ 54-55.

Finally, the Complaint alleges, "upon information and belief," "*Defendants*

failed to respond to these notices" and "*Defendants*" continued to disclose the Covered Persons' information. *Id.* ¶ 56 (emphasis added); *see also id.* ¶ 63 (alleging "*Defendants* did not cease the disclosure" (emphasis added)). It does not include a single specific allegation about any of the individual Thomson Reuters Defendants' receipt of any takedown notice or subsequent disclosure of any Covered Person's information through any website or application.

## V.   The Non-Diverse Defendants, The Takedown Notices, And The Thomson Reuters Products

The Fraudulently Joined Defendants – TR Holdings and TR Applications – have no connection to this case. They could not have received Covered Persons' written notices to the privacy.issues@thomsonreuters.com; nor could they have disclosed information about Covered Persons on the thomsonreuters.com website. As explained in the Notice of Removal, and attested to in the Declaration accompanying that Notice, that email address and website are "not owned by or registered to" the Fraudulently Joined Defendants. Notice of Removal at ¶¶ 36, 40; O'Hagan Decl. ¶¶ 11, 13. These facts are uncontested.

But, that is not all. No person's home address or home phone number – let alone the addresses and numbers of Covered Persons – is made available on the thomsonreuters.com website. *See* Fox. Decl. at ¶ 5. Rather, as materials on the same thomsonreuters.com website cited in the Complaint explain, this kind of information is available through two nonpublic, subscription-only Thomson

9

Reuters products:  CLEAR and PeopleMap, a product that is available through Westlaw.  *See* Fox Decl. ¶¶ 6, 7 (providing links to thomsonreuters.com).

None of the Thomson Reuters Defendants owns, operates, maintains, or controls CLEAR or Westlaw.  *See* Fox Decl. ¶ 8.  CLEAR and Westlaw are owned by non-defendant Thomson Reuters Enterprise Centre GmbH ("TREC"), a company incorporated and headquartered in Switzerland.  *See* Fox Decl. ¶ 10. TREC provides CLEAR and Westlaw to private entities in the United States that subscribe to those products.  Fox Decl. ¶ 11.  Non-defendant West Publishing Corporation ("West"), which is incorporated and headquartered in Minnesota, provides CLEAR and Westlaw to government entities that subscribe to those products.  *See* Fox Decl. ¶ 12.

That information is not a secret.  In fact, it is posted publicly on the thomsonreuters.com website cited by Plaintiffs in their Complaint.  *See* Fox Decl. ¶¶ 16-17 (explaining that "[m]aterials available on thomsonreuters.com identify TREC and West as the corporations that own and provide the content for both CLEAR and Westlaw" and providing links to this information).

This information also is known and readily available to any private law firm that subscribes to Westlaw.  *See* Fox Decl. ¶ 18.  The standard agreement executed by private law firms when they order Westlaw provides that it is "a legal document between" the customer and West and/or TREC.  *See id.* ¶ 18 & Ex. A.  The same is

true for government entities that subscribe to Westlaw, including law enforcement agencies and prosecutor's offices in New Jersey. *See id.* ¶ 19 & Ex. B.

Many law enforcement authorities and prosecutors' offices in New Jersey subscribe to and use CLEAR, ███████████████████████████████████████ ████████████████████████████████████████████. *See* Fox Decl. ¶ 20; Atlas Dep. at 148:9 – 149:3; Ex. 3. The standard agreement for CLEAR executed by government entities provides that it is "a legal document between" the customer and West. *See* Fox Decl. ¶ 21 & Ex. C. In fact, the resolution authorizing the Monmouth County Prosecutor's Office to subscribe to CLEAR explicitly states that CLEAR is "proprietary to West" and that the Office is "authorized to execute a contract with West" for CLEAR. *See* Ex. 3. That resolution is publicly available and posted online. *See* https://oprs.co.monmouth.nj .us/OPRS/Meetings/FetchAgendaDoc.aspx?id=36505&ty=1.

In addition to CLEAR and Westlaw, TREC owns the thomsonreuters.com website and the domain for the email address to which Covered Persons purportedly sent their takedown notices. *See* Fox Decl. ¶¶ 14-15. West employees monitor and manage requests made through that email address. *Id.* ¶ 15.

Neither of the Fraudulently Joined Defendants "have the ability or authority to remove information from CLEAR or Westlaw." Fox Decl. ¶ 9. Those two non-diverse Defendants simply have no connection to anything related to this case.

## ARGUMENT

Just as Atlas and its lawyers cannot engineer an assignment process to collusively join a Delaware plaintiff to defeat federal jurisdiction in the dozens of Daniel's Law cases brought against Delaware corporations that allegedly made Covered Persons' information available, *see* Consol. Br. at 6-35, they cannot defeat federal jurisdiction in this case by fraudulently joining two Delaware corporations that do *not* make any person's information available.

Contrary to Plaintiffs' sparse and conclusory allegations, the Fraudulently Joined Defendants have nothing to do with the email address to which Plaintiffs allegedly sent takedown notices or the website that Plaintiffs allege (but in reality did not) disclose their addresses or telephone numbers. Nor do the Fraudulently Joined Defendants own, operate, or otherwise control the two Thomson Reuters products that do provide this kind of information, CLEAR and PeopleMap. Plaintiffs cannot recover against TR Holdings or TR Applications. Under the "objective criteria" set forth in Third Circuit precedent, their attempt to join those companies as defendants is fraudulent. *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985). The citizenship of the Fraudulently Joined Defendants should be disregarded. As a result, this Court has jurisdiction.

## I.    The Fraudulent Joinder Standard

Joinder is fraudulent where "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant."  *Briscoe*, 448 F.3d at 216.  If the Court finds that a plaintiff fraudulently joined non-diverse defendants, the Court may "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction."  *Id.* (quoting *Mayes v. Rapoport,* 198 F.3d 457, 461 (4th Cir. 1999)).

While the Court "must resolve all contested issues of substantive fact in favor of [Plaintiffs]," it does not need to "blindly accept whatever [P]laintiffs may say no matter how incredible or how contrary to the overwhelming weight of the evidence."  *In re Diet Drugs*, 220 F. Supp. 2d at 419-20; *see also Reith v. Teva Pharms. USA, Inc.*, 2019 WL 1382624, at *2 (E.D. Pa. Mar. 27, 2019) (Bartle, J.).  Moreover, in assessing whether a defendant's joinder is fraudulent, the Court "must 'look beyond the face of the complaint for indicia of fraudulent joinder," *Briscoe*, 448 F.3d at 218, and thus may look at "evidence outside the pleadings, including such supporting documents as affidavits and deposition transcripts," *Whitman v. Walmart Stores East, LP*, 2021 WL 4745069, at *3 (E.D. Pa. Oct. 12, 2021).  The Court also may consider "the absence of proof of a defendant's involvement in claimed conduct."  *Williams v. John Middleton Co.*, 2023 WL

3393413, at *2 (E.D. Pa. May 11, 2023).

In support of their Motion to Remand, Plaintiffs dedicate only one footnote to Defendants' assertion of fraudulent joinder and include hardly any analysis. *See* Mem. at 12-13 n.5. Plaintiffs' fleeting reference to *Briscoe* as holding that fraudulent joinder is "only applicable if [a] party was joined for the purpose of defeating jurisdiction," *id.*, is incomplete at best. "Fraudulent joinder" is a "term of art," and "a demonstration of outright fraud or bad faith is not necessary to render a party fraudulently joined." *Keystone Sports & Ent. LLC v. Fed. Ins. Co.*, 2021 WL 5789021, at *2 (E.D. Pa. Dec. 7, 2021). Indeed, "[a] plaintiff's subjective motive for suing a non-diverse defendant . . . is not relevant to the inquiry of fraudulent joinder." *Reid v. Albizem*, 2014 WL 2915883, at *3 (E.D. Pa. June 25, 2014) (citing *Abels*, 770 F.2d at 32). Rather, the inquiry focuses on the "objective criteria" discussed above. *See Abels*, 770 F.2d at 32; *see also Becker v. Farmington Cas. Co.*, 2009 WL 1845221, at *2 n.2 (M.D. Pa. June 25, 2009) (fraudulent joinder "utilizes an objective inquiry and does not require the presence of actual fraud or improper motive" (citing *Spring-Ford Area Sch. Dist. v. Genesis Ins. Co.*, 158 F. Supp. 2d 476, 484 n.3 (E.D. Pa. 2001))). Joinder is most often determined to be fraudulent in cases involving "a claim against an in-state defendant that simply has no chance of success, whatever the plaintiff's motives." *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992) (collecting cases).

Plaintiffs make no attempt to explain how their claims against the non-diverse Defendants have any chance of success – they do not even mention those two Defendants in their brief.  *See* Mem. at 12-13 n.5.  Whatever the motives for including the non-diverse Thomson Reuters Defendants here, Plaintiffs' claims against TR Holdings and TR Applications plainly have no reasonable basis in fact, and no colorable ground supports the claims against those companies.  *See Briscoe*, 448 F.3d at 216.  As their uncontroverted declarations and the publicly available record makes clear, the Fraudulently Joined Defendants have no involvement whatsoever in the alleged disclosures that give rise to Plaintiffs' claims.

## II.  Plaintiffs' Claims Against The Fraudulently Joined Defendants Have No Reasonable Basis In Fact, And There Is No Colorable Ground To Proceed Against Them

Removal is proper here because there are no facts or other grounds supporting a claim against the Fraudulently Joined Defendants.  *See id; see also Susman v. Goodyear Tire & Rubber Co.*, 2018 WL 1243733, at *6 (E.D. Pa. Mar. 9, 2018) (analyzing cases where "[d]istrict courts have denied remand where the burden of proving fraudulent joinder was met through uncontested evidence that no reasonable basis in fact existed for the claim against a fraudulently joined defendant").  Courts have held that where a plaintiff "cannot obtain relief" against a non-diverse defendant, that defendant has "no actual interest in the outcome of the litigation" and removal is proper.  *See E. Coast Advanced Plastic Surgery v.*

*Aetna, Inc.*, 2018 WL 3062907, at *3 (D.N.J. June 21, 2018); *McKenna v. Verint Ams. Inc.*, 2022 WL 3211422, at *6 (D.N.J. Aug. 9, 2022) (denying motion to remand based on fraudulent joinder where party had no "real and substantial controversy" with plaintiff).

For example, in *Reith v. Teva Pharmaceuticals USA, Inc.*, plaintiffs filed a products liability suit against various corporations affiliated with Teva Women's Health. 2019 WL 1382624, at *1. That entity argued that it was the "only proper defendant because it is the only defendant to have manufactured and sold" the device at issue, *id.*, and the two other Teva defendants "played no role in the manufacture or sale of the device," *id.* at *3. Following limited jurisdictional discovery, the court agreed that the non-diverse Teva defendants were fraudulently joined because it was "uncontroverted" that they could not be held liable since they were neither the product's manufacturer nor seller. *See id.* at *4.

That Plaintiffs' claim against the non-diverse Defendants has no reasonable basis in fact and is not colorable – and instead is "wholly insubstantial and frivolous," *id.* at *2 – is even more obvious here than it was in *Reith*. Under Daniel's Law, a Covered Person only has a claim against a business who receives a written takedown notice but continues to disclose that person's home address and unpublished phone number. N.J. Stat. Ann. § 56:8-166.1(a), (b). In this case, Plaintiffs allege that their information was disclosed on the website

16

thomsonreuters.com and that they sent takedown notices to the email address privacy.issues@thomsonreuters.com. Compl. ¶¶ 42, 54-55. When the Thomson Reuters Defendants removed the case, they attested that the Fraudulently Joined Defendants do not own or operate that website or email address. Notice of Removal at ¶¶ 36, 40; O'Hagan Decl. at ¶¶ 11, 13. Those facts are uncontested and were not addressed in the two-sentence footnote that Plaintiffs dedicated to fraudulent joinder in their Motion to Remand.

Plaintiffs plainly cannot recover from the Fraudulently Joined Defendants under Daniel's Law. It is uncontested that those Defendants could not have received the takedown notices and did not disclose Plaintiffs' information. They do not own, operate, maintain, or control the email address to which Covered Persons sent their takedown notices. *See* Fox Decl. ¶ 15. And, the thomsonreuters.com website does even not disclose *any* person's home address or phone number. *See* Fox Decl. ¶ 5.

Before filing suit, Plaintiffs had access to information that unambiguously shows the Fraudulently Joined Defendants are not the proper defendants. That information is publicly posted on the thomsonreuters.com website cited in the Complaint. *See supra* at 9-10. The thomsonreuters.com website explicitly states that information about people is made available through CLEAR and Westlaw. *See supra* at 10. The thomsonreuters.com website also explicitly states that TREC

17

and West, not the Fraudulently Joined Defendants, are the corporations that own and provide the content for both CLEAR and Westlaw.  *See id.*

Beyond this publicly available information, any law firm, law enforcement agency, or prosecutor's office that subscribes to CLEAR or Westlaw has access to materials that explicitly state that those products are provided by TREC and/or West.  For example, to subscribe to CLEAR, the Monmouth County Prosecutor's Office – ███████████████████████████████████████████ ██████████████ – needed approval from a county resolution that explicitly stated that CLEAR is "proprietary to West" and that the Prosecutor's Office was "authorized to execute a contract with West" for CLEAR.  *See* Ex. 3.  Likewise the standard agreement for both CLEAR and Westlaw executed by law firms and law enforcement agencies states explicitly that it is a "legal document" between those customers and TREC and/or West – not the Fraudulently Joined Defendants.  *See supra* at 10-11.   Neither TR Holdings nor TR Applications "have the ability or authority to remove information from CLEAR or Westlaw."  Fox Decl. ¶ 9.

Time and again, courts have held that joinder was fraudulent where, like here, defendants were not involved in the conduct giving rise to the claims.  *See, e.g. Williams*, 2023 WL 3393413, at *4 (defendant fraudulently joined where it had "no connection to the store where Plaintiff claims he bought the cigar/cigarillo and lighter at issue in this case"); *Keystone*, 2021 WL 5789021, at *3 (holding that

defendants fraudulently joined because Pennsylvania contract law unequivocally

establishes that policyholders can only hold insurers liable for breach of contract

and the insurance policy states that the defendants "are not the insurer");

*DiMichelle v. Sears & Roebuck Co.*, 1997 WL 793589, at *2 (E.D. Pa. Dec. 5,

1997) (defendants fraudulently joined where they had "no connection" to the

product causing plaintiff's injury); *Veugeler v. Gen. Motors Corp.*, 1997 WL

160749, at *3 (N.D. Ill. Apr. 2, 1997) (defendant fraudulently joined where

plaintiff did "not link any action" on behalf of the defendant with the injuries

giving rise to the lawsuit).

Plaintiffs cannot avoid this conclusion by relying on the allegations in their

Complaint.  The Complaint asserts only conclusory allegations that each individual

Defendant is an "entity that discloses or re-discloses on the Internet or otherwise

makes available the home addresses and/or unpublished home telephone numbers

of covered persons."  Compl. ¶¶ 37-40.  Although courts generally must credit the

allegations of a plaintiff's complaint when assessing a claim of fraudulent joinder,

it is well-established that these kinds of bare "boilerplate allegations" are

insufficient to establish jurisdiction – particularly in the face of uncontroverted

evidence, like the information available to Plaintiffs and their counsel prior to

filing suit and the sworn declarations provided by the Thomson Reuters

Defendants.  *See Avicolli v. BJ's Wholesale Club, Inc.*, 2021 WL 1088249, at *4

19

(E.D. Pa. Mar. 22, 2021) ("While we are required to accept well-plead allegations as true, we are not required to blindly accept conclusory allegations . . . ."); *Reeser v. NGK Metals Corp.*, 247 F. Supp. 2d 626, 631 (E.D. Pa. 2003) (Bartle, J.) (joinder was fraudulent where allegations were "merely conclusory"); *accord, e.g.*, *Faucett v. Ingersoll-Rand Mining & Mach. Co.*, 960 F.2d 653, 655 (7th Cir. 1992) (dismissing party as fraudulently joined where an "uncontradicted affidavit . . . essentially stat[ed] that he has had absolutely nothing to do" with allegedly defective product); *Quimby v. Stevens*, 2020 WL 8881371, at *3 (D. Nev. Feb. 5, 2020) ("conclusory allegations" were insufficient to establish that party was a proper defendant); *Hernandez v. Home Depot, U.S.A., Inc.*, 2006 WL 1647438, at *2 (N.D. Ill. June 5, 2006) (joinder was fraudulent where "Home Depot, through affidavits and exhibits, . . . established that HD Development of Illinois never owned, possessed, operated, controlled, or maintained the property on which plaintiff was injured and thus can owe no duty to the plaintiff").

Nor can Plaintiffs defeat removal by citing allegations in their Complaint that group all of the Thomson Reuters Defendants together, alleging that "*Defendants*" received takedown notices and "*Defendants*" continued to disclose information.  *See, e.g.*, Compl. ¶¶ 60-63 (emphasis added).  As numerous courts have recognized, this kind of collective pleading does not state a colorable claim for jurisdictional purposes – again, particularly in light of uncontroverted evidence

like that provided by the Thomson Reuters Defendants.  *See Perez v. Penske Logistics, LLC*, 2021 WL 3661017, at *6 (E.D. Pa. Aug. 17, 2021) (removal was proper where the complaint "does not include a single factual allegation directly against" the non-diverse defendants, "makes numerous allegations against all three Defendants in the collective," and the non-diverse defendants' involvement is rebutted by declaration); *In re Diet Drugs*, 220 F. Supp. 2d at 424 (finding fraudulent joinder where complaint was "devoid of specific allegations against" non-diverse defendants and "filled instead with general statements levied against all defendants").

Indeed, there "is 'no better admission of fraudulent joinder' than the failure of a plaintiff 'to set forth any specific factual allegations' against a defendant." *Hannah v. Johnson & Johnson Inc.*, 2020 WL 3497010, at *14 (D.N.J. June 29, 2020) (quoting *Lyons v. Am. Tobacco Co.*, 1997 WL 809677, at *5 (S.D. Ala. Sept. 30, 1997)).  That is precisely the case here.

Finally, it does not matter that the Thomson Reuters Defendants share similar names or that CLEAR and Westlaw are identified as "Thomson Reuters" products.  Plaintiffs cannot rely on corporate affiliation to claim that all of the Thomson Reuters Defendants are properly named as defendants in this case.  *See Reith*, 2019 WL 1382624, at *3 ("imprecise language" regarding defendants involvement was not sufficient to treat related corporate entities as the same).  As

21

the District of Delaware explained in *Weston v. Progressive Com. Holdings, Inc.*, "[s]imply because all the defendant companies are somehow affiliated with one another is not sufficient" to establish that their joinder is not fraudulent. 2011 WL 231709, at *3 (D. Del. Jan. 24, 2011); *see also Keystone*, 2021 WL 5789021, at *3 ("that the 'Chubb' name appears throughout Plaintiffs' policy documents is immaterial because the plain language of the Policy solely lists Defendant Federal Insurance Company as the insurer").

Plaintiffs' inclusion of the Fraudulently Joined Defendants "appears to owe more to [their] jurisdictional impact than [their] actual involvement with the issues from which this matter arises." *Masselli v. Total Luxury Grp.*, 2008 WL 4126556, at *3 (D.N.J. Aug. 29, 2008). Plaintiffs filed this suit along with many dozens of other cases in New Jersey state court, a "uniformity" that Atlas and its counsel in their "sole discretion" no doubt believed would be "an efficient method of prosecuting" the dozens and dozens of cases they brought. Atlas Dep. 168:10-16; 181:6 - 182:22, 194:15-16. The cases now before this Court on Plaintiffs' Motion to Remand are uniform not only in their lack of specific allegations about the assignees, the assignments, the notices, or the alleged disclosures, but also in their attempt to manufacture a lack of diversity. *See* Consol. Br. at 6-35; *see generally In re Diet Drugs*, 220 F. Supp. 2d at 422 (considering conduct of litigants in

similar cases and noting that courts should "not leave their 'common sense' outside the courtroom when weighing evidence").

Because there can be "no debate" that the claims against the Fraudulently Joined Defendants are not colorable, *Briscoe*, 448 F.3d at 219, their citizenship should be disregarded.  Removal was proper, and this Court has jurisdiction.

## III.    The Fraudulently Joined Defendants Are, At Most, Nominal Parties

Because the Fraudulently Joined Defendants have "no control of, impact on, or stake" in this controversy, *see Weston*, 2011 WL 231709, at *2, they are nominal parties and should be disregarded when determining whether this Court has jurisdiction.  Nominal parties are those "without a true interest in the litigation," *id.* (citing *Bumberger v. Ins. Co. of N. Am.*, 952 F.2d 764, 767 (3d Cir. 1991)), against whom there is no "enforceable . . . duty under substantive law," *id.*, or who have no connection to the conduct alleged in the complaint, *see Michaels v. New Jersey*, 955 F. Supp. 315, 320 (D.N.J. 1996).  "[A] federal court must disregard" nominal parties and "can base its jurisdiction only upon the citizenship of parties with a real interest in the litigation."  *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 358 (3d Cir. 2013) (cleaned up); *see also McKenna*, 2022 WL 3211422, at *6 ("[T]he Supreme Court has emphasized that only parties with whom the plaintiff has a 'real and substantial' controversy may be considered." (quoting *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460 (1980))).

Although this ground for removal was raised in the Notice of Removal, *see* Notice of Removal ¶¶ 44-47, Plaintiffs did not address it in their Motion and have not provided any basis for suggesting the Fraudulently Joined Defendants have an interest in this case. The Fraudulently Joined Defendants have no arguable connection to Plaintiffs' claims. They did not receive the alleged takedown notices and cannot remove any information subject to those notices. *See supra* at 9-11. There is thus "no possibility" Plaintiffs "can establish a cause of action" against either of the Fraudulently Joined Defendants. *See Lopienski v. Centocor, Inc.*, 2008 WL 2565065, at *2-4 (D.N.J. June 25, 2008) (alleged conduct was "nominal in nature" where plaintiff did not allege "any facts" demonstrating that defendant assisted with manufacturing or selling product at issue).

Regardless of whether the non-diverse Thomson Reuters Defendants are nominal parties or were fraudulently joined, their citizenship should be disregarded. *See Weston*, 2011 WL 231709, at *3; *see also Spring-Ford*, 158 F. Supp. 2d at 484 n.4 ("Because I have found that the [non-diverse defendants] have no 'real interest' in this case, if I had not concluded that [those defendants] were fraudulently joined, I would have concluded that they were a nominal or formal party."). Because there is complete diversity among the remaining parties, removal is proper.

24

## <u>CONCLUSION</u>

This lawsuit is one among many mass actions that allege little information about the underlying claims, provoke important constitutional questions, and have the potential to impose significant financial penalties on the defendants to a single assignee's benefit.  The Fraudulently Joined Defendants have no ownership or control of the website or email address cited in Plaintiffs' Complaint, have no involvement with the products that disclose people's addresses and phone numbers, and have no ability to supply the non-disclosure remedy Plaintiffs claim to seek.  Simply stated, the claims Plaintiffs have asserted against those two Defendants have no reasonable basis in fact and are not colorable.  Thus, Plaintiffs' Motion to Remand should be denied.

Dated: September 16, 2024

BALLARD SPAHR LLP

 */s/ Marcel S. Pratt*
Marcel S. Pratt
Michael Berry
John W. Scott
Jordan Meyer
1735 Market Street, Fl. 51
Philadelphia, PA 19103-7599
215.864.8500
prattm@ballardspahr.com
berrym@ballardspahr.com
scottj@ballardspahr.com
meyerjl@ballardspahr.com

*Attorneys for Thomson Reuters*
*Defendants*

## **CERTIFICATE OF SERVICE**

I, Marcel Pratt, hereby certify that I caused a copy of the foregoing

Supplemental Brief of the Thomson Reuters Defendants in Opposition to

Plaintiffs' Consolidated Motion to Remand to be served via e-filing on September

16, 2024 to all counsel of record.


Date: September 16, 2024                    */s/ Marcel S. Pratt*
                                            Marcel S. Pratt