# Exhibit 1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2               FOR THE DISTRICT OF NEW JERSEY

 3

 4    In re:                         )
                                     )
 5                                   )
      DANIEL'S LAW COMPLIANCE        )
 6    LITIGATION                     )
                                     )
 7    ----------------------------)

 8

 9

10

11                    * CONFIDENTIAL *

12

13

14    VIDEOTAPED DEPOSITION OF MATTHEW WILLIAM ADKISSON

15       ATLAS DATA PRIVACY CORPORATION 30(b)(6)

16                 New York, New York

17              Tuesday, July 30, 2024

18

19

20

21

22

23    Reported by:

24    KRISTIN KOCH, RPR, RMR, CRR

25    JOB NO. J11491590
```



1

2

3                         July 30, 2024

4                         10:18 a.m.

5

6

7           Videotaped Deposition of ATLAS DATA

8     PRIVACY CORPORATION by MATTHEW WILLIAM

9     ADKISSON, held pursuant to Rule 30(b)(6) of

10    the Federal Rules of Civil Procedure, at the

11    offices of Boies Schiller Flexner LLP,

12    55 Hudson Yards, New York, New York, before

13    Kristin Koch, a Registered Professional

14    Reporter, Registered Merit Reporter,

15    Certified Realtime Reporter and Notary Public

16    of the State of New York.

17

18

19

20

21

22

23

24

25



```
 1   A P P E A R A N C E S:

 2

 3   BOIES SCHILLER FLEXNER LLP

 4   Attorneys for Plaintiffs

 5        100 SE Second Street

 6        Miami, Florida 33131

 7   BY:  JAMES LEE, ESQ.

 8        - and -

 9        44 Montgomery Street

10        San Francisco, California 94104

11   BY:  MARK C. MAO, ESQ. (Via Zoom)

12

13

14   MORGAN & MORGAN, P.A.

15   Attorneys for Plaintiffs

16        201 North Franklin Street

17        Tampa, Florida 33602

18   BY:  RYAN J. McGEE, ESQ.

19

20

21   PEM LAW LLP

22   Attorneys for Plaintiffs

23        1 Boland Drive

24        West Orange, New Jersey 07052

25   BY:  RAJIV D. PARIKH, ESQ.
```



1   A P P E A R A N C E S:   (Continued)

2

3

4   TROUTMAN PEPPER HAMILTON SANDERS LLP

5   Attorneys for Cargo Group Inc., Remine Inc.,

6   Atdata, LLC, Enformion, LLC, Corelogic, Inc.,  Red

7   Violet, Inc. and Acxiom, LLC

8        301 Carnegie Center

9        Princeton, New Jersey 08540

10  BY:  ANGELO A. STIO III, ESQ.

11       STEPHANIE L. JONAITIS, ESQ.

12       - and -

13       3000 Two Logan Square

14       Philadelphia, Pennsylvania 19103

15  BY:  MICHAEL A. SCHWARTZ, ESQ.

16       - and -

17       301 S. College Street

18       Charlotte, North Carolina 28202

19  BY:  SUSIE LLOYD, ESQ. (Via Zoom)

20       - and -

21       1001 Haxall Point

22       Richmond, Virginia 23219

23  BY:  TIMOTHY J. ST. GEORGE, ESQ. (Via Zoom)

24       SAMUEL E. FISHEL, ESQ. (Via Zoom)

25



```
 1   A P P E A R A N C E S:  (Continued)

 2

 3   HOGAN LOVELLS US LLP

 4   Attorneys for The Lifetime Value Co. LLC

 5        390 Madison Avenue

 6        New York, New York 10017

 7   BY:  DAVID M. CHEIFETZ, ESQ.

 8

 9

10   LATHAM & WATKINS LLP

11   Attorneys for Oracle International

12   Corporation, PeopleConnect, Inc., LightBox

13   Parent, L.P. and CoStar Group, Inc.

14        330 North Wabash Avenue

15        Chicago, Illinois 60611

16   BY:  ROBERT C. COLLINS III, ESQ.

17        - and -

18        555 Eleventh Street, NW

19        Washington, D.C. 20004

20   BY:  RUTH HIRSCH, ESQ. (Via Zoom)

21        BRADLEY MICHAEL BAGLIEN, ESQ. (Via Zoom)

22        - and -

23        1271 Avenue of the Americas

24        New York, New York 10020

25   BY:  SAISHA MEDIRATTA, ESQ. (Via Zoom)
```



```
 1    A P P E A R A N C E S:  (Continued)

 2

 3

 4    VEDDER PRICE

 5    Attorneys for Whitepages, Inc. and Hiya, Inc.

 6         222 North LaSalle Street

 7         Chicago, Illinois 60601

 8    BY:  BLAINE C. KIMREY, ESQ.

 9         JEANAH PARK, ESQ. (Via Zoom)

10         ERICA L. SCHUMAN, ESQ. (Via Zoom)

11         BRYAN K. CLARK, ESQ. (Via Zoom)

12         - and -

13         1633 Broadway

14         New York, New York 10019

15    BY:  STEPHANIE G. DAVID, ESQ. (Via Zoom)

16

17

18    TRESSLER LLP

19    Attorneys for Data Axle, Inc.

20         163 Madison Avenue

21         Morristown, New Jersey 07960

22    BY:  GEORGE Z. TWILL, ESQ.

23

24

25
```



```
 1   A P P E A R A N C E S:  (Continued)

 2

 3   LOWENSTEIN SANDLER LLP

 4   Attorneys for LexisNexis Risk Data

 5   Management, LLC

 6        1251 Avenue of the Americas

 7        New York, New York 10020

 8   BY:  MATTHEW BOXER, ESQ.

 9        - and -

10        One Lowenstein Drive

11        Roseland, New Jersey 07068

12   BY:  RASMEET K. CHAHIL, ESQ. (Via Zoom)

13

14   McCARTER & ENGLISH, LLP

15   Attorneys for Black Knight Technologies, LLC

16        Four Gateway Center

17        100 Mulberry Street

18        Newark, New Jersey 07102

19   BY:  SCOTT S. CHRISTIE, ESQ. (Via Zoom)

20

21   WADE CLARK MULCAHY LLP

22   Attorneys for Delvepoint LLC

23        1515 Market Street

24        Philadelphia, Pennsylvania 19102

25   BY:  ALEXANDER HUBSCHMIDT, ESQ. (Via Zoom)
```



```
 1    A P P E A R A N C E S:  (Continued)

 2

 3    KING & SPALDING LLP

 4    Attorneys for Equifax, Inc. and Kount, Inc.

 5         1180 Peachtree Street, NE

 6         Atlanta, Georgia 30309

 7    BY:  CHARLES SPALDING, JR., ESQ. (Via Zoom)

 8

 9

10    CLARK HILL PLC

11    Attorneys for 6Sense Insights, Inc. and

12    Search Quarry, LLC

13         130 E Randolph Street

14         Chicago, Illinois 60601

15    BY:  CHIRAG H. PATEL, ESQ. (Via Zoom)

16         NICOLAS V. DOLCE, ESQ. (Via Zoom)

17

18

19    CARLTON FIELDS, P.A.

20    Attorneys for Teltech Systems, Inc. and Epic

21    Applications, LLC

22         405 Lexington Avenue

23         New York, New York 10174

24    BY:  MICHAEL D. MARGULIES, ESQ. (Via Zoom)

25
```



```
 1    A P P E A R A N C E S:  (Continued)

 2

 3    WILMER CUTLER PICKERING HALE and DORR LLP

 4    Attorneys for Choreograph LLC

 5         7 World Trade Center

 6         250 Greenwich Street

 7         New York, New York 10007

 8    BY:  MARISSA M. WENZEL, ESQ. (Via Zoom)

 9

10

11    MANATT, PHELPS & PHILLIPS, LLP

12    Attorneys for Vericast

13         662 Encinitas Boulevard

14         Encinitas, California 92024

15    BY:  KAREEM A. SALEM, ESQ. (Via Zoom)

16

17

18    HARRISON LAW LLC

19    Attorneys for Epsilon Data Management, LLC,

20    Conversant LLC and Citrus Ad International, Inc.

21         141 West Jackson Boulevard

22         Chicago, Illinois 60604

23    BY:  KATHERINE GARCEAU SOBIECH, ESQ. (Via Zoom)

24         RACHEL B. NIEWOEHNER, ESQ. (Via Zoom)

25
```



```
 1   A P P E A R A N C E S:  (Continued)

 2

 3   PARKER POE ADAMS & BERNSTEIN LLP

 4   Attorneys for Blackbaud, Inc.

 5        PNC Plaza

 6        301 Fayetteville Street

 7        Raleigh, North Carolina 27601

 8   BY:  CORRI A. HOPKINS, ESQ. (Via Zoom)

 9

10

11   ZWILLGEN PLLC

12   Attorneys for People Data Labs, Inc.

13        183 Madison Avenue

14        New York, New York 10016

15   BY:  SUDHIR RAO, ESQ. (Via Zoom)

16

17

18   KELLEY DRYE & WARREN LLP

19   Attorneys for RE/MAX, LLC

20        3 World Trade Center

21        175 Greenwich Street

22        New York, New York 10007

23   BY:  AARON J. GOLD, ESQ. (Via Zoom)

24

25
```



```
 1   A P P E A R A N C E S:  (Continued)

 2

 3   BALLARD SPAHR LLP

 4   Attorneys for Thomson Reuters Corporation, Thomson

 5   Reuters Canada Limited, Thomson Reuters Holdings,

 6   Inc., and Thomson Reuters Applications, Inc.

 7        1735 Market Street

 8        Philadelphia, Pennsylvania 19103

 9   BY:  MICHAEL BERRY, ESQ. (Via Zoom)

10

11

12   KOLEY JESSEN

13   Attorneys for Data Axle, Inc.

14        1125 South 103rd Street

15        Omaha, Nebraska 68124

16   BY:  TIMOTHY R. HUTCHINSON, ESQ. (Via Zoom)

17        EMILY M. COFFEY, ESQ. (Via Zoom)

18

19

20   GREENBERG TRAURIG, LLP

21   Attorneys for OutSite Interactive, Inc. and GoHunt

22   Holdings LLC

23        500 Campus Drive

24        Florham Park, New Jersey 07932

25   BY:  AARON VAN NOSTRAND, ESQ. (Via Zoom)
```



```
 1   A P P E A R A N C E S:  (Continued)

 2

 3

 4   SPIRO HARRISON & NELSON

 5   Attorneys for Quantarium Group, LLC

 6        363 Bloomfield Avenue

 7        Montclair, New Jersey 07042

 8   BY:  THOMAS M. KENNY, ESQ. (Via Zoom)

 9

10

11

12   ALSO PRESENT:

13

14   JOSEPH BARLETTA, Videographer

15

16

17

18

19

20

21

22

23

24

25
```



1  New York, New York.  Do you see that sir?

2          A.    I do.

3          Q.    What is that address?

4          A.    This is office space that we maintain

5  in New York.

6          Q.    Okay.  Were there operations going on

7  in New York at this time?

8          A.    Yes.

9          Q.    What were the operations going on in

10 the state of New York at this time?

11         A.    General operations that the business

12 would be engaged in.  Sorry.  Do you mind asking

13 the question again.  I just want to make sure I

14 got that.

15         Q.    What were the operations that were

16 going on in the state of New York at the address

17 listed under your signature in Atlas 7?

18         A.    So if you are asking about the

19 operations of the business and where those

20 operations would be performed, Atlas was

21 incorporated and started life in April of 2021.

22 COVID was still going on, so we were started, like

23 a lot of companies back then, as a remote company

24 with individuals working in different places.

25 That has continued to the present day.  Over time



1  we have obtained office space in different places

2  where there would be a nexus of people working.

3  People perform different functions for the

4  business, so in terms of which operations would be

5  performed in New York in that office, could be any

6  number of operations that the business is engaged

7  in.

8       Q.    Is this address in New York under

9  Atlas 7 a shared office space?

10      A.    It's not WeWork, but it's -- it's sort

11  of equivalent to a dedicated WeWork space, if you

12  are familiar with that, so it's a flex company

13  that provides, I believe, shared and dedicated

14  spaces for companies.

15      Q.    Was the State Troopers Fraternal

16  Association represented by counsel with regard to

17  Atlas 7?

18      A.    I couldn't tell you.  You would have to

19  ask them.

20      Q.    Are you aware of any counsel that

21  represented the State Troopers Fraternal

22  Association in the negotiation of Atlas 7?

23      A.    I am not.

24      Q.    Okay.  Were you the point person for

25  Atlas with regard to negotiation of Atlas 7?



```
 1   Corporation to be a foreign for-profit

 2   corporation, state of New Jersey.  Do you see

 3   this, sir?

 4        A.    I see Exhibit 9, yes.

 5        Q.    Okay.  Have you ever seen this document

 6   before?

 7        A.    Let me just take a quick look at it.

 8              (Document review.)

 9        A.    It looks familiar, yes.

10        Q.    Okay.  When have you seen it?

11        A.    I don't recall an exact date.  As I

12   said, it looks familiar.

13        Q.    Okay.  Was there a reason why you

14   waited until January of 2024 to register your

15   business in the state of New Jersey?

16        A.    Yes.

17        Q.    What was that reason?

18        A.    We did not think that a registration

19   with the state of New Jersey of this type was

20   required to do business in the state of

21   New Jersey.

22        Q.    And what is your basis for that?

23        A.    My understanding of the regulations

24   that would govern that type of activity.

25        Q.    Was there a specific entity that is
```



1   excluded from doing business in the state of
2   New Jersey or gave you an exception from
3   registering your business in New Jersey that you
4   thought you fell under?
5        A.    Sorry.  Could you repeat the question.
6        Q.    Sure.  You said you didn't think you
7   had to register this type of entity, you didn't
8   think they had to register to do business.  What
9   type of entity do you didn't think had to register
10  to do business in the state of New Jersey?
11       A.    My understanding is that this document
12  relates to something called a business
13  registration certificate.  I was not aware that
14  such a thing existed until we had to file this.
15       Q.    Got it.  And the main business address
16  on Atlas 9, 180 Talmadge Road, number 218, Edison
17  New Jersey?
18       A.    Yes.
19       Q.    What operations of Atlas are conducted
20  there?
21       A.    That is a mailbox company, so we would
22  receive mail at that address and retrieve it.
23       Q.    Did you receive notice that -- you
24  meaning Atlas, that they had to file a Certificate
25  of Authority?



```
 1        A.    If you are asking whether we -- I guess
 2   what do you mean by "had to file," what is that --
 3   what is the --
 4        Q.    Did you receive notice that resulted in
 5   you filing Atlas 9?
 6              MR. LEE:  And counsel is not referring
 7        to communications you had with your counsel.
 8        A.    What do you mean by "notice"?
 9        Q.    Did you receive any type of written
10   communication advising Atlas to file Atlas 9?
11        A.    There was an organization within the
12   state that expressed a desire to sign up for our
13   services and they indicated to us that in order to
14   do so, we would have to file a BRC, a Business
15   Registration Certificate.  That was the first time
16   I had ever heard of a Business Registration
17   Certificate.
18        Q.    What organization?
19        A.    I believe it was -- it was a state
20   agency.  I believe it was the Monmouth County
21   prosecutor's association -- not association.
22   Monmouth County prosecutor's office.
23        Q.    Did you enter into an agreement with
24   the Monmouth County prosecutor's office with
25   regards to Daniel's Law services?
```



1    A.    Yes.

2    Q.    When did you enter into an agreement?

3    A.    I don't recall the exact date.

4    Q.    Earlier on we talked about your

5    education.  I have a follow-up question for you.

6          Did you leave MIT voluntarily?

7    A.    Yes.

8    Q.    Okay.  You were not subject to any

9    discipline or expulsion or violation of a policy?

10   A.    I don't know what that would have to do

11   with subject matter jurisdiction or the subject of

12   the deposition today.  If your intent is to

13   embarrass somebody who was in that situation, I

14   would call that a low blow and probably

15   inappropriate and beneath the role that you play

16   here, but the answer in my case is no.

17   Q.    Got it.  Did Perkins Coie do any work

18   related to Daniel's Law for Atlas?  I don't want

19   the specific work, just did they do any work

20   related to Daniel's Law?

21   A.    What do you mean by "related to

22   Daniel's Law"?

23   Q.    Any of the Daniel's Law-related

24   services that Atlas offers.

25   A.    Well, if you are asking as one of our



```
 1         A.    No.

 2         Q.    Who is it up to?

 3         A.    For covered persons who had signed up

 4   with us on the Atlas platform who had agreed to

 5   this terms of service, upon agreeing to the terms

 6   of service they are entering into a contractual

 7   relationship that provides us the ability to send

 8   them an assignment confirmation and assign their

 9   claim to us and then to take actions from there.

10         Q.    Turn your attention to the language in

11   subsection little (i), do you see about three

12   lines from the bottom the sentence beginning "the

13   choice to participate in each such instance of

14   formal legal action will be at your sole

15   discretion," do you see that?

16         A.    I do.

17         Q.    What does Atlas mean by that?

18         A.    Again, if you are asking for a legal

19   conclusion, I am not a lawyer and I can't offer

20   one, but as the company representative, my take

21   would be that if there is a situation where -- let

22   me just reread this to make sure I understand the

23   point that -- or the part that you are talking

24   about.

25               (Document review.)
```



800.211.DEPO (3376)
EsquireSolutions.com

```
 1              MR. LEE:  Hold on.  Improper
 2        hypothetical.  Calls for speculation.
 3        Outside the scope.  Asked and answered.
 4              Go ahead.
 5        A.    Yes, we would pursue that claim.
 6        Q.    Take a look at subsection little (ii).
 7   Do you see the sentence -- the first sentence:
 8   "In certain circumstances Atlas may in its
 9   discretion determine that an efficient method of
10   prosecuting takedown notice enforcement actions is
11   through civil litigation whereby individual claims
12   are aggregated and prosecuted by Atlas or its
13   affiliates," do you see that?
14        A.    You are talking about the first
15   sentence under little (ii)?
16        Q.    Yes, sir.
17        A.    Yes, I see that here.
18        Q.    What does Atlas mean by "civil
19   litigation whereby individual claims are
20   aggregated and prosecuted"?
21        A.    Again, I would -- I would refer to my
22   early answer -- earlier answer, which is that our
23   primary objective is to see compliance with the
24   law, to see the law respected, to see individuals
25   have rights to privacy, security, safety that they
```



```
 1   can use to protect themselves and their families.
 2   So to -- I'm just reading the sentence again here.
 3   Insofar as this is speaking to enforcement, I
 4   think to me I read this as saying there are
 5   different avenues of justice available and -- and
 6   this speaks to Atlas having discretion to
 7   determine what those avenues may be.
 8        Q.    What does Atlas mean by "efficient
 9   method"?
10             MR. LEE:  Outside the scope.
11        A.    So I read efficient method to speak to
12   the efficiency by which non-compliance can be
13   addressed and, again, speaking as a lay person,
14   not as a lawyer, I imagine that there are certain
15   forms of justice that are more efficient than
16   others, some of which might require an individual
17   to spend more time, more money, expend more
18   resources, versus others, so I think the goal here
19   again, if you are asking about the word "efficient
20   method" and efficiency, our focus was how do we
21   help achieve compliance, and I think this sentence
22   speaks to our thoughts on that.
23        Q.    Does Atlas have any specific
24   understanding of why it used the phrase
25   "individual claims are aggregated"?
```



```
 1         Q.    I was going to ask you if it was in the
 2    ballpark.  Okay.
 3               Why were all of those ballpark 19,000
 4    assigned claims included in my lawsuit, why didn't
 5    you pick a smaller number, for example, to
 6    aggregate?
 7               MR. LEE:  Calls for a legal conclusion.
 8         Calls for speculation.  Outside the scope.
 9         A.    Our goal is to effectuate compliance
10    with the law.  I don't know why we would
11    selectively have chosen a smaller number of
12    individuals who -- to send assignment
13    confirmations to.  Our goal is to make the law
14    work and make it effective, and the litigation
15    reflects that and you see that there is uniformity
16    across the different cases that we filed.
17         Q.    But Atlas has the discretion, to use
18    the words in your terms of service, to make that
19    determination as to how many claims to aggregate;
20    correct?
21         A.    You keep using the word "aggregation."
22    I --
23         Q.    You used the word.
24               MR. LEE:  Excuse me.  Come on.  You are
25         a professional.  Please let the witness
```



 1        information.  Otherwise I direct you not to

 2        answer.

 3        A.    To the extent that the choice of what

 4   county to file in is part of litigation strategy

 5   or services that outside counsel would have

 6   provided, then I can't speak to that.  I'll say to

 7   me personally it doesn't matter what county an

 8   action is filed in.  There is no difference to me

 9   one county or another.  The specific choice of

10   county would be, as I say, either part of

11   litigation strategy or -- or a decision that

12   outside counsel would have made.

13        Q.    Are you refusing to answer based on

14   privilege?

15             MR. LEE:  He just answered.

16        A.    I would give you the same answer I just

17   gave you on that.

18        Q.    Do you know why they were filed in five

19   counties?

20             MR. LEE:  Asked and answered.

21        A.    At a high level, lawsuits were filed

22   because there was egregious non-compliance by data

23   brokers.  In some cases data brokers, including I

24   believe the client you represent, one of the

25   clients you represent, refused, conveyed that they





 1   would never comply with Daniel's Law and refused

 2   in writing to comply with Daniel's Law.

 3          Q.     Can you --

 4          A.     Lawsuits were filed.

 5          Q.     -- give me that writing, please?

 6                 MR. LEE:  Excuse me.  Excuse me.

 7                 Finish your answer, please.

 8          A.     I could be mistaken.  This is my best

 9   recollection.  And in the face of that

10   non-compliance, lawsuits were filed attempting to

11   get these companies to comply, get these data

12   brokers to follow the law, remove the information

13   that presented a risk to these covered persons and

14   help them understand their -- and take seriously

15   their compliance obligations going forward.

16          Q.     Why were they filed in five different

17   counties?

18                 MR. LEE:  Asked and answered.

19          A.     Again, to me it made no difference

20   where a lawsuit was filed, not what county, not

21   federal court, state court.  That was part of

22   litigation strategy, services provided by things

23   that would fall under those privileged

24   conversations.  So what I can tell you again, just

25   to restate the earlier point, our primary



1  objective is to get companies to comply with the

2  law, and the lawsuits were filed in an attempt to

3  further that objective and I hope it works.

4      Q.    Why were none of the cases filed in

5  federal court?

6            MR. LEE:  I give you the same

7      instruction.

8      A.    Again, it didn't matter to me at any

9  point whether we were in federal court or state

10  court.  I couldn't have told you the difference

11  between one or the other, and the decision -- any

12  decision about where to file, how to file would

13  have been part of litigation strategy and part of

14  the services, guidance, advice that outside

15  counsel would provide to us.

16      Q.    You didn't answer my question.  Why did

17  you file none of the cases in federal court?

18            MR. LEE:  He did answer your question.

19      Asked and answered.

20            MR. KIMREY:  No, he didn't.

21            MR. LEE:  Asked and answered.

22      Q.    Why did you file no cases in federal

23  court?

24            MR. LEE:  Asked and answered.

25      A.    I can't give you any answer other than



```
 1  the one I have already given you.
 2       Q.    Why did you file none of the cases in
 3  federal court?
 4            MR. LEE:  Asked and answered.
 5       A.    I can repeat my -- continue to repeat
 6  myself, but I feel like if you are asking the same
 7  question, then the answer I gave you would be --
 8  would be the answer to that question.
 9       Q.    Why, Atlas, did you not file a single
10  one of the 142 cases in federal court even though
11  you have conceded that many of them are subject to
12  federal subject matter jurisdiction?
13            MR. LEE:  Asked and answered.
14       A.    I'm not sure I understand the
15  difference between the question you just asked and
16  the previous questions you asked, but if you want
17  to restate it, I'm happy to take another look at
18  it.
19            MR. KIMREY:  Could you re-read my
20       question, please.
21            MR. LEE:  He asked you to restate it,
22       not to read it again.
23       A.    I'm not sure -- I'm not gonna
24  understand it if you read me the same question any
25  better than I did the first time, but if you -- if
```



```
1   you restate it, I'm happy to take a look at that.

2        Q.    Why did you, Atlas, not file a single

3   case in federal court?

4              MR. LEE:  Asked and answered I think a

5         fifth time.

6        A.    I think that's the same question you

7   had asked me before.  I don't think that's --

8        Q.    Can you give me an answer?

9        A.    I did give you an answer.

10       Q.    What was the answer?

11             MR. LEE:  It's in the record.

12       A.    Atlas, I, we, had no preference, no

13  understanding of federal court, state court, other

14  courts.  What we wanted was for Daniel's Law to be

15  complied with, and in consultation with attorneys

16  litigation strategy was developed, decisions were

17  made and the lawsuits were filed.  I'm not sure

18  what more I can add.

19       Q.    Who represented the assignors in their

20  entering into the terms and conditions with Atlas?

21       A.    You are asking --

22             MR. LEE:  Calls for speculation.  Lack

23        of foundation.

24       A.    Just so I understand, you are asking of

25  the call it ballpark 19,000 assignors across the
```



```
 1              MR. KIMREY:  Objection.  Vague.
 2      A.    No, I am not.
 3      Q.    Prior to the lawsuits being filed, did
 4  you know what subject matter jurisdiction is?
 5      A.    I did not.
 6      Q.    Prior to the lawsuits being filed, did
 7  you know what CAFA is?
 8      A.    I did not.
 9      Q.    Does Atlas care whether these cases,
10  the 142 cases that we have been talking about, are
11  in New Jersey federal court or state court?
12      A.    We do not.
13      Q.    And can you tell us, just in closing,
14  what does Atlas do?
15      A.    Someone had asked this question
16  earlier, I forget who it was, and I think in my
17  request for clarification they asked --
18              MR. KIMREY:  Objection.  Calls for a
19      narrative.  Beyond the scope.
20      A.    -- what Atlas meant to me when it was
21  incorporated, and I can tell you what Atlas means
22  to me now.  In two words I would say public
23  ███████████████████████████████████
24  ████████████████████████████████████████
25  ███████████████████████████████████████
```

