# Ballard Spahr
LLP

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
TEL 215.665.8500
FAX 215.864.8999
www.ballardspahr.com

Marcel Pratt
Tel: 215.864.8506
Fax: 215.864.8999
prattm@ballardspahr.com

March 16, 2026

*By Electronic Filing*

Judge Harvey Bartle III
U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

Re:    Atlas Data Privacy Corp., et. al. v. Thomson Reuters Corp., et. al., No. 24-4269

Dear Judge Bartle:

Defendants Thomson Reuters Enterprise Centre GmbH and West Publishing Corporation ("Thomson Reuters") write in response to Plaintiffs' March 3 and March 6, 2026 letters (ECF 117 & 118) asserting that confidentiality order negotiations have reached an impasse with respect to Thomson Reuters (as wells other defendants). First, this letter explains the importance of certain terms that Thomson Reuters proposed for a confidentiality order. Second, it details how Plaintiffs refused to engage with Thomson Reuters' proposal, were non-responsive while seeking multiple extensions from the Court, and suddenly declared an impasse shortly before midnight on the day of the last deadline set by the Court.

Pursuant to Court Order (ECF 109), on January 21, 2026, Thomson Reuters proposed a confidentiality order based on the District of New Jersey's form order, with modifications designed to address specific concerns raised by this litigation, the Thomson Reuters products at issue, and the circumstances presented by the possible coordination of this litigation with other litigation brought by the same Plaintiffs against other defendants.[1] A summary of the proposed changes to the District of New Jersey form confidentiality order are summarized below.

---

[1]    Thomson Reuters attach their proposed confidentiality order, with redlines indicating differences with the District of New Jersey form order, as Exhibit 1 hereto. A clean version is attached as Exhibit 2.

Judge Harvey Bartle III
March 16, 2026
Page 2

| Exhibit 1 Citation/s | Change |
|---|---|
| ¶¶ 3, 5, 7, 10, 13, Ex. A | Edits to ensure confidential information is not disclosed to competitors. For example, these edits request: that deponents sign an agreement to be bound by the confidentiality order, Ex. 1 ¶¶ 5(e), 7(f); advance notice if a party reasonably expects a deposition to include the discussion of Confidential or Attorneys' Eyes Only material (as those terms are defined in Exhibits 1 and 2) to ensure that no one for whom that information should not be disclosed is present at the deposition, *id.* ¶ 13; and that experts to whom Confidential or Attorneys' Eyes Only material may be disclosed affirm that they are not employed by a party's competitor. *Id.* ¶ 10, Ex. A.<br><br>Ensuring that Confidential or Attorneys' Eyes Only material will not be disclosed to competitors is particularly important here where Plaintiffs have brought similar cases against numerous entities, many of which are Thomson Reuters' competitors. |
| ¶ 4 | Term to prohibit the upload of Confidential or Attorneys' Eyes Only material into a generative artificial intelligence (AI) tool absent permission of the producing party.<br><br>This term is essential to ensure that Thomson Reuters' proprietary and confidential material are not incorporated into or "learned" by Atlas's AI products, thereby exploiting that information in other commercial uses or disclosing it in other cases. This provision allows Thomson Reuters to ask questions about the specific tool before agreeing that Plaintiffs can use it. |
| ¶ 9 | Language providing for the default provisional Attorneys' Eyes Only designation of all deposition transcripts until thirty days after receipt of the final deposition transcript, at which point any party can request for all or portions of the transcript to be permanently designated as Confidential or Attorney's Eyes Only.<br><br>These proposed edits are to ensure efficiency such that parties do not need to pre-designate transcripts as potentially Confidential or Attorneys' Eyes Only, but simply keeps the transcripts as Attorneys' Eyes Only pending final designations. |
| ¶ 18 | Term to ensure non-parties whose confidential information is in the possession of a party and requested in this litigation have an opportunity to object to the production thereof. |

Judge Harvey Bartle III
March 16, 2026
Page 3

| Exhibit 1 Citation/s | Change |
|---|---|
|  | This term ensures that the parties will not run afoul of any obligations to third parties to keep their information confidential. |

However, on February 4, Plaintiffs responded with an alternate proposal altogether—one that disregarded <u>all</u> edits that Thomson Reuters proposed in its January 21 draft. *See* Ex. 3 (Plaintiffs' February 4 proposed confidentiality order). Nonetheless, in an effort to reach a mutually agreeable confidentiality order, Thomson Reuters ran a redline between the drafts, which the parties discussed at a meet and confer on February 9. Following that meet and confer, the parties agreed to consult with their clients on matters discussed at the meet and confer and to exchange their clients' positions. *See* Ex. 4 (March 5, 2026 email chain, February 9 email from E. Wingfield).  Counsel for Thomson Reuters relayed its positions days later. *See id.* (February 13 email from E. Wingfield). Plaintiffs never responded in-kind with their positions.  Instead, on February 16 (the Court's deadline for a status report) Plaintiffs indicated they would be seeking an extension. *Id.* (February 16, 2026 email form J. Merejo).

Plaintiffs then proposed times for a meet and confer, but never responded to the alternate times proposed Thomson Reuters. Plaintiffs instead requested that Thomson Reuters produce another redline of the draft confidentiality orders.  Thomson Reuters responded that the request seemed unproductive given that Plaintiffs never relayed their clients positions from the last meet-and-confer and, therefore, there was nothing to "redline." *Id.* (February 16-23 emails). Again, waiting until the Court-ordered deadline, Plaintiffs indicated that they would seek further extension. *Id.* (February 23 8:08PM email from J. Merejo). Plaintiffs again requested a redline from Thomson Reuters, to which Thomson Reuters reminded Plaintiffs that Plaintiffs never relayed their clients' positions on the terms discussed at the February 9 meet and confer. *Id.* (February 24 email from E. Wingfield). Two days later, Thomson Reuters followed up, again imploring Plaintiffs to provide their positions. (February 26 1:55 PM email from E. Wingfield).

On February 26, Plaintiffs proposed another, new confidentiality order (attached hereto as Exhibit 5). This confidentiality order—again—did not work off of the draft Thomson Reuters provided on January 21. Nor did it address or relate to a number of the items discussed at the February 9 meet and confer and reflected in Thomson Reuters' January 21 draft—including the use of AI, the provisional designation of deposition transcripts as Attorneys' Eyes Only, and provisions to ensure that the parties will not run afoul of confidentiality obligations to third parties. *See* Ex. 5. That same day, Thomson Reuters responded by asking Plaintiffs for a draft that reflected the concerns Thomson

Judge Harvey Bartle III
March 16, 2026
Page 4


Reuters had raised at the February 9 meet and confer. Ex. 4 (February 26 8:35 PM email from E. Wingfield). Plaintiffs never responded to that request.

On the day of the next deadline set by the Court, Thomson Reuters asked whether Plaintiffs would be seeking further extension.  Plaintiffs waited until less than thirty minutes before the deadline to inform Thomson Reuters that "we have reached an impasse regarding competitor information designation, AI term, and other proposed terms circulated by Defendant." *Id.* (March 2 email form J. Merejo). After the Court deadline for doing so, Plaintiffs then unilaterally informed the court that the parties could not agree on confidentiality order terms. ECF 117 p. 4.

On March 4, Thomson Reuters expressed frustration that Plaintiffs failed to ever meaningfully engage with proposed terms which reflected important priorities for Thomson Reuters. Ex. 3 (March 4 email from E. Wingfield). Plaintiffs responded, saying, among other things, that "Plaintiffs are attempting to streamline the confidentiality framework across the related cases so that the parties and the Court are not required to manage an untenable number of differing confidentiality orders." *Id.* (March 4 email from J. Merejo). In other words, Plaintiffs never did—and apparently never intended to—consider Thomson Reuters' proposal. Rather, they proposed orders that would allow them to have identical obligations across numerous cases.  But these cases do not involve identical defendants, products, services, or industries and, where some similarities might exist, it is because the defendants are potential competitors, heightening the need for strong confidentiality protections. The fact that Plaintiffs chose to bring lawsuits against numerous individual entities in different cases does not mean that Thomson Reuters should be forced to abide by the terms of a confidentiality order for Plaintiffs' convenience.

Thomson Reuters look forward to the chance to further discuss these issues at the forthcoming conference.


Respectfully,

*/s/ Marcel Pratt*
Marcel Pratt